UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

SUE MI TERRY,

*Defendant*.

24 Cr. 427 (LGS)

**ORAL ARGUMENT
REQUESTED**

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DR. SUE MI
TERRY'S PRETRIAL MOTIONS**

KKL LLP
350 Fifth Avenue, 77th Floor
New York, NY 10118
Telephone: (212) 390-9550

SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 390-9000

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000

JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Telephone: (212) 891-1600

*Attorneys for Dr. Sue Mi Terry*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 1

    I.       THE COURT SHOULD DISMISS THE INDICTMENT ............................. 1

        A.    The Court Should Dismiss Count Two Because the Indictment Fails to State a Willful Failure to Register Under FARA .................................................................. 2

        B.    The Court Should Dismiss Count Two Because It Is Duplicitous .................................. 7

        C.    The Court Should Dismiss Count One (Conspiracy) for Similar Defects ...................... 9

        D.    Criminal FARA Prosecutions Are Facially Void for Vagueness ................................ 10

        E.    The Court Should Dismiss the Indictment in Full Because the Charged Statute Is Void for Vagueness as Applied to the Allegations ................................................ 14

    II.     THE GOVERNMENT MUST PROVIDE A BILL OF PARTICULARS .................. 15

    III.   THE COURT SHOULD SUPPRESS DR. TERRY'S STATEMENTS ...................... 16

        A.    The Government's Piecemeal Approach to the Custody Analysis Is Inconsistent with Governing Authority ...................................................................................... 17

        B.    The Government Tries, and Fails, to Justify and Minimize the Custodial Atmosphere Created by Law Enforcement .............................................................. 17

        C.    The Court Should Hold an Evidentiary Hearing .......................................................... 19

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Arnett v. Kennedy,*
   416 U.S. 134 (1974)...................................................................................... 12

*Att'y Gen. of United States v. Covington & Burling,*
   411 F. Supp. 371 (D.D.C. 1976)................................................................... 13

*Att'y Gen. of United States v. Irish N. Aid Comm.,*
   668 F.2d 159 (2d Cir. 1982).................................................................... 9, 12

*Att'y Gen. of United States v. Irish People, Inc.,*
   796 F.2d 520 (D.C. Cir. 1986)..................................................................... 11

*Att'y Gen. of United States v. Wynn,*
   104 F.4th 348 (D.C. Cir. 2024)...................................................................... 7

*Att'y Gen. of United States v. Wynn,*
   636 F. Supp. 3d 96 (D.D.C. 2022). ............................................................... 8

*Buckley v. Valeo,*
   424 U.S. 1 (1976).......................................................................................... 12

*Cheek v. United States,*
   498 U.S. 192 (1991).................................................................................... 5, 6

*Dombrowski v. Pfister,*
   380 U.S. 479 (1965)................................................................................. 12, 14

*Griffin v. United States,*
   502 U.S. 46 (1991)......................................................................................... 4

*Hamling v. United States,*
   418 U.S. 87 (1974).......................................................................................... 3

*Hernandez v. McIntosh,*
   2023 WL 6566817 (S.D.N.Y. Oct. 10, 2023) ......................................... 19

*Hyde v. United States,*
   225 U.S. 347 (1912)....................................................................................... 8

*Kulhawik v. Holder,*
   571 F.3d 296 (2d Cir. 2009)........................................................................ 18

*Meese v. Keene,*
    481 U.S. 465 (1987) ............................................................................ 1, 10, 11, 14

*Ratzlaf v. United States,*
    510 U.S. 135 (1994) .......................................................................................... 6

*Reid v. Bondi,*
    2024 WL 5466811 (2d Cir. Nov. 5, 2024) ....................................................... 8

*Russell v. United States,*
    369 U.S. 749 (1962) .......................................................................................... 2

*U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO,*
    413 U.S. 548 (1973) ........................................................................................ 12

*United States v. Adames,*
    878 F.2d 1374 (11th Cir. 1989) ........................................................................ 6

*United States v. Bortnovsky,*
    820 F.2d 572 (2d Cir. 1987) ........................................................................... 16

*United States v. Butt,*
    2019 WL 479117 (S.D.N.Y. Feb. 7, 2019) ..................................................... 17

*United States v. Concord Management & Consulting LLC,*
    385 F. Supp. 3d 69 (D.D.C. 2019) ............................................................ 15, 16

*United States v. Craighead,*
    539 F.3d 1073 (9th Cir. 2008) ........................................................................ 19

*United States v. Davidoff,*
    845 F.2d 1151 (2d Cir. 1988) ......................................................................... 15

*United States v. Filippi,*
    2013 WL 208919 (S.D.N.Y. Jan. 16, 2013) ................................................... 20

*United States v. Giddins,*
    858 F.3d 870 (4th Cir. 2017) .......................................................................... 19

*United States v. Hallford,*
    280 F. Supp. 3d 170 (D.D.C. 2017) ............................................................... 19

*United States v. Henry,*
    888 F 3d 589 (2d Cir. 2018) ............................................................................. 6

*United States v. Hinton*,
   127 F. Supp. 2d 548 (D.N.J. 2000) ................................................................. 7

*United States v. Ho*,
   984 F.3d 191 (2d Cir. 2020)........................................................................... 4

*United States v. Lasky*,
   967 F. Supp. 749 (E.D.N.Y. 1997) ................................................................. 3

*United States v. McDonough*,
   56 F.3d 381 (2d Cir. 1995)............................................................................. 4

*United States v. McGoff*,
   831 F.2d 1071 (D.C. Cir. 1987) ..................................................................... 8

*United States v. Michel* ("*Michel I*"),
   2022 WL 4182342 (D.D.C. Sept. 13, 2022) ............................................. 5, 11

*United States v. Michel* ("*Michel II*"),
   2023 WL 2388501 (D.D.C. Mar. 6, 2023) ..................................................... 6

*United States v. Michel* ("*Michel III*"),
   2024 WL 1603362 (D.D.C. Apr. 12, 2024) ................................................. 15

*United States v. Mitchell*,
   966 F.2d 92 (2d Cir. 1992).................................................................... 17, 19

*United States v. Murgio*,
   209 F. Supp. 3d 698 (S.D.N.Y. 2016)......................................................... 16

*United States v. Nachamie*,
   101 F. Supp. 2d 134 (S.D.N.Y. 2000).......................................................... 9

*United States v. Newton*,
   369 F.3d 659 (2d Cir. 2004)................................................................. 17, 18

*United States v. Ohle*,
   678 F. Supp. 2d 215 (S.D.N.Y. 2010).......................................................... 9

*United States v. Pichardo*,
   1992 WL 249964 (S.D.N.Y. Sept. 22, 1992)............................................... 18

*United States v. Pirro*,
   212 F.3d 86 (2d Cir. 2000)............................................................................ 5

*United States v. Pleasant,*
    125 F. Supp. 2d 173 (E.D. Va. 2000) ............................................................. 7, 9

*United States v. Pugh,*
    2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ...................................................... 3

*United States v. Rajaratnam,*
    736 F. Supp. 2d 683 (S.D.N.Y. 2010) ................................................................ 9

*United States v. Reed,*
    114 F.3d 1067 (10th Cir. 1997) ....................................................................... 14

*United States v. Rigas,*
    258 F. Supp. 2d 299 (S.D.N.Y. 2003) .............................................................. 16

*United States v. Sattar,*
    272 F. Supp. 2d 348 (S.D.N.Y. 2003) .............................................................. 14

*United States v. Serrano,*
    191 F. Supp. 3d 287 (S.D.N.Y. 2016) ............................................................ 2, 3

*United States v. Solomonyan,*
    451 F. Supp. 2d 626 (S.D.N.Y. 2006) ................................................................ 5

*United States v. Tartaglione,*
    2023 WL 2237903 (S.D.N.Y. Feb. 27, 2023) ................................................... 17

*United States v. Torres,*
    604 F.3d 58 (2d Cir. 2010) ................................................................................ 9

*United States v. Watson,*
    404 F.3d 163 (2d Cir. 2005) ............................................................................ 19

*United States v. Zhang,*
    833 F. Supp. 1010 (S.D.N.Y. 1993) .................................................................. 4

*Winters v. New York,*
    333 U.S. 507 (1948) ........................................................................................ 12

**Statutes, Regulations, and Proposed Regulations**

18 U.S.C. § 542 ...................................................................................................... 4

18 U.S.C. § 664 ...................................................................................................... 4

18 U.S.C. § 1461 .................................................................................................... 3

18 U.S.C. § 2339B ................................................................................................................ 3

18 U.S.C. § 3282 ................................................................................................................ 7

22 U.S.C. § 611 ........................................................................................................ *passim*

22 U.S.C. § 613 ................................................................................................... 11, 12, 13

22 U.S.C. § 618 ..................................................................................................... 3, 8, 10

Amending and Clarifying Foreign Agents Registration Act Regulations, 90 Fed. Reg. 40
    (proposed Jan. 2, 2025)................................................................................................ 11

**Government Policies and Guidance**

U.S. Dep't of Just., *U.S. Attorneys' Manual: Criminal Resource Manual* § 2062,
    https://www.justice.//usam/criminal-resource-manual-2062-foreign-agentsregistration-
    act-enforcement............................................................................................................ 6

**Other Sources**

U.S. Dep't of Just., Press Release, "Chicago Man Convicted of Conspiracy to Violate U.S.
    Sanctions By Providing Services to Zimbabwean President Mugabe and Others" (Oct. 10,
    2014), https://www.justice.gov/usao-ndil/pr/chicago-man-convicted-conspiracy-violate-us-
    sanctions-providing-services-zimbabwean ................................................................. 15

## PRELIMINARY STATEMENT

This prosecution is unprecedented.  The U.S. government has never once criminally prosecuted an individual under FARA[1] for conduct that is commonplace for foreign affairs experts like Dr. Terry, and it should not be permitted to do so here.  The activity alleged in this Indictment, as a matter of law, fails to state a FARA violation.  In its effort to mask this defect and more, the government misconstrues applicable law, ignores the allegations in its own Indictment, and distorts Dr. Terry's arguments, at times beyond recognition.  *See* ECF No. 52 ("Opp.").  As one example, the government contends (at 12–13) that the Supreme Court has foreclosed First Amendment facial vagueness challenges to criminal prosecutions for failing to register under FARA, citing *Meese v. Keene*, 481 U.S. 465 (1987).  That is dead wrong.  The Supreme Court has never adjudicated—much less foreclosed—a constitutional challenge to a criminal FARA prosecution.  The government also repeatedly asks this Court (*e.g.*, at 5–7) to defer consideration of Dr. Terry's arguments by mischaracterizing them as premature.  But there is no reason to defer review of the Indictment's clear and fatal deficiencies, particularly considering the Indictment's substantial chilling effect on activity protected by the First Amendment (to say nothing of the devastating effect on Dr. Terry).

In short, the Court should dismiss the Indictment now.  If this case survives, then the Court should direct the government to provide Dr. Terry with a bill of particulars and suppress the un-*Mirandized* statements she allegedly made under a custodial interrogation.

## ARGUMENT

## I.    THE COURT SHOULD DISMISS THE INDICTMENT

The government's attempts to defend its flawed Indictment are without merit.  Not only

---

[1] Dr. Terry incorporates the defined terms set forth in the memorandum of law in support of her pretrial motions. *See* Memorandum of Law in Support of Dr. Sue Mi Terry's Pretrial Motions ("Memorandum" or "Mem."), ECF No. 40.

does the Indictment tar Dr. Terry with prejudicial and irrelevant surplusage, it fails to state key elements of the crimes charged.  Its fundamental failure to inform Dr. Terry of the true nature of the charges against her is reason alone to dismiss the Indictment, but several other defects require dismissal as well:  The Indictment fails to state criminal FARA liability as a matter of law, is duplicitous, and violates the U.S. Constitution's guarantees of due process and free speech.[2]

**A.    The Court Should Dismiss Count Two Because the Indictment Fails to State a Willful Failure to Register Under FARA**

Count Two is defective because it fails (1) to state the essential elements of a willful FARA violation and (2) to allege conduct that establishes FARA liability as a matter of law.

**1.    The Enumerated Activities Under 22 U.S.C. § 611(c)(1)(i)–(iv) Are Essential Elements of the Offense Which the Indictment Fails to State**

Whether Dr. Terry engaged in an activity enumerated under 22 U.S.C. § 611(c)(1) is an essential element of the crime charged in Count Two that the government fails to plead.

> [I]t is an elementary principle of criminal pleading, that where the definition of an offence … includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must … descend to particulars.

*Russell v. United States*, 369 U.S. 749, 765 (1962).  Put simply, Dr. Terry can only criminally violate FARA by engaging in the specific activities enumerated under 22 U.S.C. § 611(c)(1). Because the Indictment does not specify the requisite activity, it fails to inform Dr. Terry of the charge against which she must defend.  This is especially prejudicial as each activity implicates unique defenses.  *See* Mem. 38.  This pleading failure requires dismissal of Count Two.  *See, e.g.*, *United States v. Serrano*, 191 F. Supp. 3d 287, 289 (S.D.N.Y. 2016) (dismissing a criminal count for the indictment's failure to plead explicitly an implicit element of the charged crime

---

[2] Dr. Terry requests oral argument on her motion.  Consistent with the Court's Individual Rules of Practice, Dr. Terry anticipates a lawyer who has been out of law school for fewer than five years will argue on her behalf.

despite tracking the generic language of the statutory prohibition).

The government is plainly wrong (at 7–8) that the mere fact that the specific triggering activities enumerated under 22 U.S.C. § 611(c)(1) appear in the lengthy statutory definition of an "agent of a foreign principal" obviates its obligation to plead such activities in the Indictment. Just like "the essential jurisdictional element" of the crime in *Serrano* that was "concealed in an unreferenced, subsidiary statutory provision," 191 F. Supp. 3d at 290, the core element of enumerated activity under FARA is concealed in a subsidiary statutory provision not referenced in Count Two of the Indictment. *See* Ind. ¶ 66 (not referencing 22 U.S.C. § 611(c)(1)). It is thus insufficient for the Indictment to "track" the "generic terms" of 22 U.S.C. §§ 618(a)(1) and 612(a). This is so for a good reason: failing to plead enumerated statutory activity presents a significant risk that the grand jury may not have understood the elements of the crime and the evidence necessary to support the Indictment. *Serrano*, 191 F. Supp. 3d at 289.[3]

The government's assertion (at 7–8 n.3) that requiring it to plead the applicable activities under 22 U.S.C. § 611(c)(1) would improperly force it to reveal its legal theory in advance of trial fundamentally misapprehends the core distinction between a "legal theory" and an essential element of a crime, which a defendant is entitled to know upon arraignment. In both cases the government cites for this proposition, the defendants asked the government to preview exactly how it would prove elements of the charged offenses at trial. *See United States v. Lasky*, 967 F.

---

[3] The two cases cited by the government (at 7–8) to support its argument that the enumerated statutory activity under 22 U.S.C. § 611(c)(1) are mere statutory definitions that have no bearing on the essential elements of Count Two are inapposite. In *Hamling v. United States*, the Supreme Court held that the government was not required to plead the legal definition of "obscenity" under 18 U.S.C. § 1461 because that definition "does not change with each indictment." 418 U.S. 87, 119 (1974). In *United States v. Pugh*, a district court held that the government was not required to plead a one-paragraph clarifying definition of the word "personnel" that Congress amended to 18 U.S.C. § 2339B to address vagueness and overbreadth concerns. 2015 WL 9450598, at *8 (E.D.N.Y. Dec. 21, 2015). Here, Dr. Terry is not arguing that the government is under an obligation to provide legal definitions she can readily ascertain from statutes and case law. Rather, she contends that the government must plead which of the four different categories of enumerated activity the government accuses her of having engaged in without registering.

Supp. 749, 753 (E.D.N.Y. 1997) (the government need not plead exactly how the defendant appropriated union benefit plan funds to state an offense under 18 U.S.C. § 664); *United States v. Zhang*, 833 F. Supp. 1010, 1020 (S.D.N.Y. 1993) (the government need not plead exactly how certain false statements were false to state an offense under 18 U.S.C. § 542).  But the issue here is not that the Indictment fails to detail *how* Dr. Terry may have, for instance, acted as a "publicity agent" for the South Korean government, 22 U.S.C. § 611(c)(1)(ii), rather, whether she is accused of having done so *at all*.[4]  The government's related argument (at 7–8 n.3) that it implicitly pleaded every enumerated activity under the statute in the Indictment is also without merit.  The Indictment never refers to the enumerated activities under subsections (iii) and (iv).  And the only instance where it refers to subsections (i) and (ii) is in paragraph 9 which generally describes "certain types of conduct" FARA prohibits without registration.[5]  It remains unclear from the Indictment which of these two subsections applies to her alleged activities, if they even apply at all.  *See* Mem. 17–18, 30–32, 36–39.

      2.    <u>The Facts as Alleged Fail to Establish FARA Liability as a Matter of Law</u>

Rather than respond to each of Dr. Terry's arguments about why none of her alleged activity required FARA registration, *see* Mem. 16–21, the government mischaracterizes (at 5–7) her arguments as premature sufficiency-of-the-evidence arguments, or as part of an improper motion for summary judgment in a criminal case.  But Dr. Terry does not challenge the adequacy of the facts the government may offer in support of Count Two.  Rather, she argues that the Indictment fails to allege a crime within FARA's terms, including that the conduct alleged could

---

[4] The government indicates (at 19 n.10) for the first time that it believes that Dr. Terry acted as "public-relations counsel" and a "publicity agent."  If so, then the government was obligated to plead that element in the Indictment.

[5] The government also contends (at 7–8 n.3) that Count Two conjunctively pleads the enumerated activities.  Not so. The plain language of Count Two fails to track the language of the possible elements that the government could prove at trial to sustain a conviction.  *Cf. Griffin v. United States*, 502 U.S. 46, 47 (1991); *United States v. Ho*, 984 F.3d 191, 198 (2d Cir. 2020); *United States v. McDonough*, 56 F.3d 381, 390 (2d Cir. 1995).

not trigger a duty to register as a matter of law.  As another court in this District has recognized,

"it would be a waste of judicial resources to conduct a trial, only to rule on a post-trial motion

that the government's theory of criminal liability fails, no matter what facts it was able to

establish at trial."  *United States v. Heicklen*, 858 F. Supp. 2d 256, 262 n.5 (S.D.N.Y. 2012).  No

registrable activity appears on the face of the Indictment, requiring dismissal now.

*a.*     *The Indictment Fails to Allege Disregard of a Known Legal Duty*

The government also seeks to defer this Court's consideration of the requisite mental

state necessary to state a willful failure to register under FARA by arguing (at 9) that Dr. Terry is

improperly requesting a premature jury instruction.[6]  Dr. Terry has done no such thing.  Rather,

in accordance with binding Second Circuit precedent, she asks this Court to dismiss Count Two

for its failure to "charge a violation of a known legal duty."  *United States v. Pirro*, 212 F.3d 86,

91 (2d Cir. 2000).  Notably, the government fails to identify a single allegation suggesting that

Dr. Terry was ever aware that her alleged conduct required her to register but that she willfully

chose not to do so.  That pleading failure is particularly striking considering that, elsewhere in its

opposition, the government acknowledges (at 24) that the relevant actus reus of the charged

crime is an alleged failure to file a registration statement, not any affirmative conduct.

*b.*     *FARA Requires a Heightened Standard of Willfulness*

Binding Supreme Court precedent, namely *Cheek v. United States*, 498 U.S. 192 (1991),

makes clear that statutes concerning crimes of omission, like FARA, require actual knowledge of

the specific statutory duty.  The only case the government cites that holds differently in the

criminal FARA context is an out-of-Circuit district court case, *United States v. Michel*, No. 19

---

[6] To support this argument, the government cites a case where a criminal defendant, at the motion to dismiss stage, "move[d] for an unspecified jury instruction that [would] inform[] the jury of [a] defense" he intended to raise at trial.  *United States v. Solomonyan*, 451 F. Supp. 2d 626, 640 n.3 (S.D.N.Y. 2006).

- 5 -

Cr. 148 (CKK) (D.D.C.). But the *Michel* court's four-sentence analysis on willfulness is wrong. *First*, despite the *Michel* court's earlier recognition that the relevant actus reus in a criminal FARA violation is an omission, *see Michel I*, 2022 WL 4182342, at *5–6, the court later imports a standard of willfulness that, by its very terms, applies to affirmative actions, not omissions: "A person *acts* 'willfully' when they *act* with knowledge that their conduct was unlawful." *Michel II*, 2023 WL 2388501, at *7 n.6 (emphasis added) (cleaned up). *Second*, the *Michel* court's related suggestions that the duty to register under FARA is not "abstruse" and that a failure to do so is "inherently malign," *id.*, directly conflict with the government's own prosecutorial guidance that FARA is merely "a *malum prohibitum* enactment not well known outside the legal/lobbying community," Mem. 25. *Finally*, the *Michel* court fails to explain why laws that criminalize tax evasion, such as the statutes at issue in *Cheek*, 498 U.S. 192, and *Ratzlaf v. United States*, 510 U.S. 135 (1994), are meaningfully different from laws like FARA that criminalize the failure to file a registration statement.[7] The *Michel* court's view that the former crime is "just about paperwork," whereas the latter is not, *Michel II*, 2023 WL 2388501, at *7 n.6, does not withstand scrutiny, especially when one considers the deleterious effects of willful tax evasion. Because the Indictment here fails to allege that Dr. Terry was aware that her alleged conduct required her to register under FARA but chose not to do so, the Court should dismiss Count Two.

---

[7] The government is correct (at 10 n.5) that the Second Circuit in *United States v. Henry* held that "the heightened definition of willfulness applicable to 'highly technical statutes,'" such as those at issue in *Cheek* and *Ratzlaf*, "does not apply" to the AECA. 888 F.3d 589, 599 (2d Cir. 2018). But the Second Circuit still held that to sustain criminal liability for violating the AECA the government must show "that a defendant is generally aware of export license requirements for military-grade materials." *Id.* at 600. Put simply, willfulness under the AECA still requires the defendant to have "violated a known legal duty." *Id.*; *accord* Mem. 23 (discussing *United States v. Adames*, 878 F.2d 1374 (11th Cir. 1989)). In the criminal FARA context, the government, at minimum, must show that Dr. Terry was generally aware of FARA's registration requirement and that she evaded it anyways. The Indictment is devoid of any such an allegation. Even so, the government never explains how the near-universal and yearly obligation to pay income tax that was at issue in *Cheek* is somehow more technical and abstruse than the obligation to register under FARA, which is "not well known outside the legal/lobbying community." Mem. 25 (quoting CRM § 2062).

- 6 -

**B.      The Court Should Dismiss Count Two Because It Is Duplicitous**

There are also year-long gaps in the Indictment in which Dr. Terry is not alleged to have engaged in any registrable activity at all.  *See* Mem. 32.  During those gaps, Dr. Terry could not have had a legal obligation to register.  *See Att'y Gen. of United States v. Wynn*, 104 F.4th 348, 352–53 (D.C. Cir. 2024).  By grouping together into one count at least three distinct periods or instances of alleged FARA activity, the Indictment compromises Dr. Terry's rights to notice of the charges against her, to a unanimous verdict as to each separate offense, and, should she face conviction, to appropriate sentencing.  The result is patent unfairness.

These are precisely the set of circumstances that warrant pretrial dismissal for the defect of duplicity.  *See United States v. Pleasant*, 125 F. Supp. 2d 173, 175–76, 183 (E.D. Va. 2000); *cf. United States v. Hinton*, 127 F. Supp. 2d 548, 556 (D.N.J. 2000).  If this case is allowed to proceed as charged, the government will have the opportunity to present to the jury numerous distinct activities over a nearly ten-year period that the government believes triggered an obligation to register.  If a jury, for instance, finds that Dr. Terry engaged in registrable activity in only 2014, *see* Ind. ¶ 13, then Dr. Terry could face a conviction for failing to register more than five years ago, despite the five-year statute of limitations, *see* 18 U.S.C. § 3282, and may never know which alleged activities resulted in conviction, compromising both her ability to challenge the verdict post-trial and to argue for appropriate sentencing.

The government's failure (at 24–29) to respond directly to Dr. Terry's statute of limitations argument is a telling omission.  Instead, the government opposes dismissal of the substantive FARA charge on duplicity grounds by (1) arguing that this Court should credit an outlier, one-judge dissent from the D.C. Circuit as persuasive authority, (2) confusing common law agency with FARA agency, and (3) asserting, without any relevant support, that such a direct challenge to an obvious defect in the Indictment is somehow premature.  All three efforts fail.

- 7 -

*First*, this Court should reject the dissenting view that the crime of failing to register under FARA should continue indefinitely, even after the registrable conduct ceases.  *See United States v. McGoff*, 831 F.2d 1071, 1097 (D.C. Cir. 1987) (Bork, J., dissenting).  FARA's plain language, the rule of lenity, and the canon against absurdity require this Court to reject that outlier view.  Indeed, this outlier approach effectively renders nil the statute of limitations under FARA.  An individual could act as an unregistered agent in 2025, cease that conduct forever the following year, and then face criminal prosecution for failing to register fifty years later.[8]  There is no indication that by specifying a FARA violation as "a continuing offense," 22 U.S.C. § 618(e), Congress intended such an absurd result.  Rather, Congress intended what the D.C. Circuit has long held to be true: "the statute of limitations for failing to register … begins to run from the last day that an individual acts as" a foreign agent.  *McGoff*, 831 F.2d at 1096.[9]

*Second*, the Court should reject the government's attempt to conflate FARA agency and common law agency to save Count Two.  The government insists (at 27–28) that Count Two is not duplicitous because a common law agency relationship can persist even in the absence of any activities on behalf of the principal.[10]  But this is not a case about common law agency, which the Second Circuit has expressly distinguished from statutory FARA agency.  *See Att'y Gen. of*

---

[8] Not to worry, insists the government (at 26).  The statute of limitations would still have some force because the day the government files an indictment for failing to register under FARA fifty years after the relevant conduct ceased, the criminal defendant can then file a belated registration statement so that the statute of limitations finally begins to run.  The Second Circuit strongly disfavors such "Kafkaesque scenarios," especially when a human being's liberty is at stake.  *Reid v. Bondi*, 2024 WL 5466811, at *9 n.13 (2d Cir. Nov. 5, 2024).

[9] As the government acknowledges (at 26), Judge Boasberg expressed his view that the obligation to register under FARA should last indefinitely in the context of a civil enforcement action.  Had he presided over a criminal FARA case, it is more likely he would have resolved any statutory ambiguity in favor of criminal defendants, who are prejudiced by a reading of FARA which allows for prosecutions to be initiated more than five years, if not decades, after the relevant conduct ceases.  *See Att'y Gen. of United States v. Wynn*, 636 F. Supp. 3d 96, 102 (D.D.C. 2022).

[10] Apart from common law agency, the government relies on inapposite conspiracy law to argue that Dr. Terry had an ongoing duty to register under FARA even during the large gaps of time where she is not alleged to have undertaken any activity on behalf of the South Korean government.  *See* Opp. 28 (citing *Hyde v. United States*, 225 U.S. 347, 369 (1912)).  The law of conspiracy has no bearing on the contours of FARA agency, a statutory creation.

*United States v. Irish N. Aid Comm.* ("*INAC*"), 668 F.2d 159, 161 (2d Cir. 1982).  FARA enumerates four activities under 22 U.S.C. § 611(c)(1) that require registration.  Absent engaging in such activities, Dr. Terry was not a foreign agent and was not obligated to register.

 *Third*, this is precisely the stage of the case where it is appropriate for Dr. Terry to move for dismissal because of duplicity.  *See, e.g.*, *Pleasant*, 125 F. Supp. 2d at 175–76.  The government's argument (at 28) that the existence and duration of gaps in registrable activity is a premature question of fact flies in the face of its own Indictment.[11]  And the only two cases the government cites (at 28–29) to support its view that Dr. Terry's duplicity challenge to Count Two is premature are easily distinguished.  In both of those cases, the courts denied duplicity challenges as premature by applying a rule that is unique to the conspiracy context.[12]  Count Two is not a conspiracy charge, and her duplicity challenge to Count Two is not premature.

### C. The Court Should Dismiss Count One (Conspiracy) for Similar Defects

 A conspiracy to violate FARA, like a substantive violation, requires alleged conspirators to know of the duty to register.  *See generally United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010) ("The knowledge of the parties is relevant to a conspiracy charge to the same extent as it may be for conviction of the substantive offense." (cleaned up)).  Because the government has failed to identify a single allegation that any representative of the South Korean government was aware of any such duty or agreed Dr. Terry should evade it, Count One fails as a matter of law.

 Count One is also duplicitous.  Indeed, *United States v. Nachamie*, which the government cites (at 30), expressly contemplates the pretrial dismissal of a duplicitous conspiracy charge

---

[11] The government also argues (at 29 n.12) that the Indictment implicitly alleges that Dr. Terry continued to engage in registrable activities during these large gaps long before 2020, based on a single allegation that Dr. Terry dined with two NIS officials in August 2020.  The Court should not credit this blatant attempt to rewrite the Indictment.

[12] *See United States v. Ohle*, 678 F. Supp. 2d 215, 222 (S.D.N.Y. 2010) ("If the Indictment on its face sufficiently alleges a single conspiracy, the question of whether a single conspiracy or multiple conspiracies exists is a question of fact for the jury."); *United States v. Rajaratnam*, 736 F. Supp. 2d 683, 688 (S.D.N.Y. 2010) (same).

where, as here, "as a matter of law … the allegations in a single conspiracy count improperly charge multiple conspiracies," such as "if the Government had included the distribution and sale of cocaine as an object of a conspiracy to commit Medicare fraud."  101 F. Supp. 2d 134, 153–54 (S.D.N.Y. 2000).  That is the case here, where the government includes the organization of a think tank event requested by a South Korean MFA official, *see* Ind. ¶¶ 45, 64(m), as an object of an alleged conspiracy between Dr. Terry and an NIS official for her to evade FARA registration before allegedly parroting his talking points in U.S. media, *see* Ind. ¶¶ 39, 64(l).

## D.    Criminal FARA Prosecutions Are Facially Void for Vagueness

The Indictment is also defective because criminal prosecutions for failing to register under FARA are facially void for vagueness.  As a threshold matter, the Supreme Court has never heard a constitutional challenge to criminal FARA prosecutions brought under 22 U.S.C. § 618(a).  After all, prior to 2016, FARA prosecutions were exceedingly rare.  Moreover, the government is wrong (at 12) that the Supreme Court has already held that FARA categorically places no burden on protected expression, citing *Keene*, 481 U.S. 465.  In that *civil* case, the Court considered a narrow challenge to the statutory term "political propaganda" to describe certain expressive materials intended to influence U.S. foreign policy.  *See id.* at 469–70.  In doing so, the Court expressly stated that "[t]he constitutionality of" the "registration, filing, and disclosure requirements" were "not at issue" in the case.  *Id.* at 467–68.

Indeed, the only criminal case the government cites (at 12–13, 24) to suggest that vagueness challenges to criminal FARA prosecutions are foreclosed is *Michel*.  But that out-of-Circuit district court case makes the same mistake the government makes here: Both erroneously assert that vagueness challenges to criminal FARA prosecutions fail because of higher-court decisions that (1) were issued in civil FARA enforcement actions and (2) never reached the core question of whether criminally prosecuting individuals for failing to register pursuant to FARA's

- 10 -

vague statutory definitions violates the First and Fifth Amendments.  *See* Opp. 12 (citing *Keene*, 481 U.S. at 477–85); *Michel I*, 2022 WL 4182342, at *4 (citing *Att'y Gen. of United States v. Irish People, Inc.*, 796 F.2d 520, 526 (D.C. Cir. 1986)).  Indeed, *Keene* and *Irish People* are not authorities on the constitutionality of *criminal* FARA, and this Court should not credit them as such.  Moreover, the *Michel* defendant's briefing did "not actually identify any particular statutory text" he believed was vague and "devote[d] less than a page to the argument."  2022 WL 4182342 at *5.  Dr. Terry, however, identifies numerous aspects of FARA's statutory text that are vague.[13]  *See* Mem. 25–30.  *Michel* does not, and should not, control.

The remaining arguments offered by the government (at 13–18) to defeat Dr. Terry's vagueness challenge also fail.  *First*, the government has no good response (at 13–14) to its previous concession in an official rulemaking document that it is not "feasible to codify the broad range of factors that may inform whether a person qualifies as" a foreign agent and that "persons … are unclear as to the applicability of the Act," thereby necessitating the issuance of advisory opinions.  NPRM at 7–9.  Initially, the government responds (at 14) that its statements about the need for advisory opinions are irrelevant to whether FARA's provisions are vague because such opinions merely shed light on the government's "present enforcement intentions." It then contends that such opinions actually alleviate any vagueness concerns because they provide potential criminal defendants with definitive legal guidance on the duty to register.  But the government cannot have it both ways.  The advisory opinion process either provides fair notice to individuals on what requires FARA registration, or it does not.  It certainly does not.

Moreover, two of the three cases the government cites (at 14) for the proposition that the

---

[13] Contrary to the government's assertion (at 15), it is not difficult to ascertain which provisions of FARA Dr. Terry argues are unconstitutionally vague.  *See* Mem. 26–28 (identifying "request," 22 U.S.C. § 611(c)(1), "under the direction of," *id.*, "not serving predominantly a foreign interest," 22 U.S.C. § 613(d)(2), and the definitions of "political activities" and "political consult[ing]" as unduly vague).

availability of advisory opinions alleviates any vagueness concerns are wholly inapposite, as they involved civil, not criminal penalties.  *See Arnett v. Kennedy*, 416 U.S. 134 (1974); *U.S. Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 580 (1973).  The specter of criminal penalties is the beating heart of the void-for-vagueness doctrine, *see Winters v. New York*, 333 U.S. 507, 517–18 (1948), which is rarely applied to laws with mere civil consequences.[14]  And, in referencing (at 14) *Buckley v. Valeo*, 424 U.S. 1 (1976), the government conveniently fails to mention that the Supreme Court found that in that case, the advisory opinion process was insufficient to remedy the statute's vagueness, *id.* at 41 n.47.[15]

*Second*, the fact that Dr. Terry's Memorandum (*e.g.*, at 27) discusses specific allegations from the Indictment does not defeat the facial nature of her challenge.  *Contra* Opp. 15; *see, e.g.*, *Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) (sustaining facial void for vagueness challenge even though certain "allegations and offers of proof outlin[ing] the chilling effect on free expression" were the "prosecutions initiated and threatened in" that case).  In any event, the Memorandum also discusses other third-party conduct implicated by FARA's vague provisions. *See, e.g.*, Mem. 27 (arguing "the overly broad and vague definitions … could be read to sweep up any exchange of information with a foreigner about domestic or international politics"); *id.* at 28–29 (citing secondary sources arguing FARA's text is vague as applied to third parties).  So, too, have several amici.  *See* ECF Nos. 45, 48.

*Third*, the government's proposed reading of the 22 U.S.C. § 613(d)(2) exemption does nothing to cure its vagueness.  The government posits (at 16) that this exemption for conduct

---

[14] For this same reason, the government's reliance (at 15–16) on the civil *INAC* case to suggest that the meaning of the statutory term "request" is not unconstitutionally vague is misplaced.  *See* 668 F.2d at 161.

[15] Moreover, when the Supreme Court suggested in a footnote in *Buckley* that advisory opinions in some hypothetical future case "might" be able to remedy a statute's vagueness, the Court referred to "a comprehensive series of advisory opinions or a rule delineating" the statutory prohibition at issue, 424 U.S. at 41 n.47, something that the government claims is impossible for FARA advisory opinions to achieve, *see* Opp. 14.

"not serving predominantly a foreign interest" covers "conduct that … does not have as its primary end the service of the foreign principal." But such a reading could still "apply to every activity alleged in the Indictment because each one served to advance Dr. Terry's personal and professional goals," Mem. 27, and certainly could apply to countless other activities third parties may engage in, ultimately out of self-interest, even if for a foreign principal. That the government remains free to prosecute someone for failing to register when such a vague registration exemption exists perfectly captures why such prosecutions are void for vagueness.[16]

*Fourth*, the government is mistaken when it asserts (at 17) that Dr. Terry "does not bother to explain what she believes is vague about the term 'political activities.'" She clearly argues it is "vague" because it can reasonably capture "any activity that could plausibly have any future effect on U.S. foreign policy or the public's view on such policy, no matter how indirect or insignificant." Mem. 32. Relatedly, the government's assertion (at 17) that other elements of establishing a FARA agency relationship clarify the broad definition of a "political consultant" entirely misses the point. Even with those other elements, it is still the case that an individual could be prosecuted for acting as a "political consultant" for simply responding to a question from a foreign individual about domestic or international politics without registering first.

*Finally*, the government's reminder (at 18) that at trial, Dr. Terry may argue that her alleged conduct did not meet "statutory standards" has no bearing on whether those standards are facially vague. Even if Dr. Terry convinces a jury that none of her conduct required registration, other individuals would still self-censor before engaging in routine journalistic activity protected by the First Amendment for fear of the government initiating yet another prosecution that

---

[16] The one case the government cites (at 16) in connection with its § 613(d)(2) arguments does not provide any meaningful clarity on the scope of that exemption. *See Att'y Gen. of United States v. Covington & Burling*, 411 F. Supp. 371, 374 (D.D.C. 1976) (asserting, without explanation, that "most, if not all, of the legal work that an attorney would do for a foreign principal outside the courtroom or hearing room would fall within this exemption").

exploits FARA's vagueness.  *See Dombrowski*, 380 U.S. at 487 ("The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure.").  In sum, the Court should dismiss the Indictment because criminal prosecutions for failing to register under FARA are facially void for vagueness.

### E.    The Court Should Dismiss the Indictment in Full Because the Charged Statute Is Void for Vagueness as Applied to the Allegations

The only two FARA activities that could possibly cover the Indictment's allegations, *see* 22 U.S.C. § 611(c)(1)(i)–(ii), are unconstitutionally vague as applied, requiring the Indictment's dismissal.  *See United States v. Sattar*, 272 F. Supp. 2d 348 (S.D.N.Y. 2003).  This as-applied challenge to FARA based on the allegations in the Indictment is not "premature" as the government contends (at 19).  The government identifies no binding authority that precludes such a challenge at the motion to dismiss stage in a criminal case.[17]  And moreover, Judge Koeltl endorsed such a challenge in *Sattar*.  272 F. Supp. 2d at 356.

The government's attempts (at 23) to distinguish *Sattar* are meritless.  *First*, there is no doubt that criminally prosecuting someone for failing to register under FARA after engaging in the conduct alleged in the Indictment places a burden on protected expression.  *See* Mem. 20 & n.25, 28–29.  And *Keene*, 481 U.S. 465, never held that criminal FARA prosecutions do not burden expression.  *See supra* § I.D.  *Second*, the activities alleged do not reach the "hard core" of what FARA criminalizes.  *Sattar*, 272 F. Supp at 359.  Merely exchanging non-sensitive information with a professional contact and news source, *see* Ind. ¶¶ 32–33, is not the formal

---

[17] Given this lack of binding authority, the government (at 20) is left to rely on an inapposite case from the Tenth Circuit.  *See United States v. Reed*, 114 F.3d 1067 (10th Cir. 1997).  Unlike Dr. Terry, the criminal defendant in *Reed* never moved to dismiss the indictment on the basis that the statute was vague as applied to the specific conduct alleged therein.  Rather, the court *sua sponte* determined that the statute was vague as applied to the government's pretrial proffer of evidence, which the Tenth Circuit held to be both premature and in error.  *Id.* at 1068–70.

"political consult[ing]" that FARA contemplates.[18]  And hosting a happy hour to connect

professional contacts, *see id.* ¶¶ 37, 55, is not among the sort of "political activities" that have

required registration in the past, which require a concerted effort to change U.S. policy.[19]

The government is also wrong (at 21) when it suggests that Dr. Terry misunderstands as-

applied vagueness analysis.  Specifically, the government contends she "speculates that the

Government will advance at trial 'the broadest possible reading' of the statutory terms 'political

consultant' and 'political activities' and then describes hypothetical consequences to these

hypothetical constructions."  Opp. 20 (quoting Mem. 31–32).  But that plainly distorts the

argument.  Rather, Dr. Terry argues that the only way FARA can possibly cover the alleged

activities is if the government stretches FARA's vague definitions of "political activities" and

"political consult[ing]" as far as it possibly can.  *See* Mem. 31–32.  Therefore, a "reasonable

person in Dr. Terry's shoes could not have known" she was violating the law when she did not

register under FARA.  *Id.*  Accordingly, the Court should dismiss the Indictment.

## II.    THE GOVERNMENT MUST PROVIDE A BILL OF PARTICULARS

Absent dismissal, Dr. Terry requires a bill of particulars so that she may mount an

adequate defense and avoid unfair surprise at trial.  *First*, the government has no response to Dr.

Terry's argument that "broad" statutes like FARA require the government "'to particularize the

nature of the charge to a degree that might not'" ordinarily be necessary.  Mem. 36 (quoting

*United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988)).  *Second*, the government fails to

distinguish *United States v. Concord Management & Consulting LLC*, 385 F. Supp. 3d 69

(D.D.C. 2019), which, like this case, involved not only foreign co-conspirators, but also an

---

[18] *See, e.g.*, U.S. Dep't of Just., Press Release, "Chicago Man Convicted of Conspiracy to Violate U.S. Sanctions By Providing Services to Zimbabwean President Mugabe and Others" (Oct. 10, 2014).

[19] *See, e.g.*, *Michel III*, 2024 WL 1603362, at *10 (Michel executed a back-channel lobbying campaign in the United States to convince the Trump Administration to return a Chinese national to the People's Republic of China).

indictment that failed to specify the conduct that required registration under FARA and which disclosure provisions were allegedly violated.  *Id.* at 78.  Here, as in *Concord Management*, Dr. Terry is entitled to know which "activities" allegedly required registration, along with which "disclosure provisions" (*e.g.*, enumerated FARA activities) she allegedly violated.  *See id.* at 79. *Third*, the voluminous discovery serves only to obfuscate any particulars therein, as Dr. Terry lacks guidance to distinguish between which activities—over a ten-year period—the government believes required registration, and which did not.  *See United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) ("the Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified").  *Finally*, the government is wrong that disclosure of trial materials can remedy an insufficiently specific indictment.  Notably, in the case the government cites (at 34), the defendant *was provided a bill of particulars*.  *See United States v. Rigas*, 258 F. Supp. 2d 299, 305 (S.D.N.Y. 2003).  Dr. Terry seeks basic factual information about the charges against her, which is essential to her ability to defend this case.[20]  Basic precepts of fairness dictate that the Court should order the government to provide those particulars.  *See* Mem. 37–39.

### III.    THE COURT SHOULD SUPPRESS DR. TERRY'S STATEMENTS

The government disputes that Dr. Terry was in custody on June 5, 2023 by: (A) misapplying the legal standard, (B) providing post hoc, irrelevant rationalizations for FBI agents' coercive tactics, and (C) misrepresenting the relevance of their tactics.  The Court should reject these arguments and suppress her statements or, alternatively, hold an evidentiary hearing.

---

[20] The government's list (at 2–3) of "unregistered activities," which does not include alleged activities for the time periods identified in the motion and is set off by the non-exhaustive term "including," does not answer Dr. Terry's outstanding questions.  *See United States v. Murgio*, 209 F. Supp. 3d 698, 720 (S.D.N.Y. 2016) (discussing government's "use of 'among other things'" and partially granting request for bill of particulars).

### A.  The Government's Piecemeal Approach to the Custody Analysis Is Inconsistent with Governing Authority

The government misapplies the "totality of the circumstances" standard to argue Dr. Terry was not in custody.  One by one (at 41–48), the government isolates each factor identified in Dr. Terry's motion to argue that each factor, standing alone, does not amount to a custodial interrogation.[21]  But courts do not view each factor standing alone, and for good reason: because that is not how human beings experience encounters with law enforcement.  Rather, all of the factors must be weighed together—the totality of the circumstances—and no single factor standing alone is dispositive.  *See United States v. Newton*, 369 F.3d 659, 675–77 (2d Cir. 2004).  The parties agree that central to the Court's analysis should be whether the agents "'affirmatively convey[ed] the message that [Dr. Terry was] not free to leave.'"  *See* Opp. 40 (quoting *United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir. 1992)).  Viewed in totality, that precise message— that Dr. Terry was not free to leave—was conveyed both explicitly and implicitly.[22]

### B.    The Government Tries, and Fails, to Justify and Minimize the Custodial Atmosphere Created by Law Enforcement

Further, the government improperly attempts to justify the FBI's coercive tactics and minimizes certain factors by misrepresenting their relevance.  These post hoc attempts by the government to explain away and minimize a custodial atmosphere must be rejected.

The government explains why (at 42–47) certain "routine law enforcement step[s]" were

---

[21] *See, e.g.*, Opp. 43, 45, 48 (arguing agents' "forceful insistence, *without more*" does not amount to custody; that "'the mere presence' of officers . . . *unaccompanied by any coercive tactics*" does not amount to custody; and that the interview lasted more than five hours "is *not dispositive* of custody" (emphasis added)).

[22] In attempting to distinguish *United States v. Tartaglione*, 2023 WL 2237903 (S.D.N.Y. Feb. 27, 2023) and *United States v. Butt*, 2019 WL 479117 (S.D.N.Y. Feb. 7, 2019), the government further demonstrates its misapplication of the standard.  Asserting (at 44, 47) these cases are inapposite because they contain factors absent from Dr. Terry's case, the government glosses over the ways in which Dr. Terry's circumstances were *more* custodial than in these cases: Dr. Terry was interrogated for over five hours, was taken from her home to a hotel room, and was berated and threatened.  *Compare* Terry Decl. *with Butt*, 2019 WL 479117, at *5, 17 (defendant in custody when questioned for ten minutes in his home) *and Tartaglione*, 2023 WL 2237903, at *17 (defendant in custody when questioned for 22 minutes by agents who never raised their voices and were congenial for the duration).

- 17 -

pragmatic, or, in one notable example, could be justified in the context of an arrest.[23]  But the

purported reasons for the FBI's coercive tactics—reasons alleged by lawyers without support

from any sworn declarations—are irrelevant to the analysis.[24]  "*Miranda*'s concern is not with

the facts known to the law enforcement officers or the objective reasonableness of their actions

in light of those facts," but rather "on the facts known to the seized suspect and whether a

reasonable person would have understood that his situation was comparable to a formal arrest."

*Newton*, 369 F.3d at 675.  Dr. Terry does not rely on her subjective interpretation of events in her

brief, *contra* Opp. 48, and the government cannot rely on FBI agents' subjective justifications.

  The government also distorts Dr. Terry's arguments, attempting to minimize the legal

significance of the officers' aggressive tactics.  For example, the government makes the

staggering assertion (at 42) it is of no significance that Dr. Terry "spoke to the [a]gents while

wearing the same clothing she chose to wear when she opened the door to her apartment," *i.e.*,

her pajamas and no bra.  When officers entered her home without any warning, Dr. Terry was

not permitted to change even though she asked to do so, clearly *expressing* discomfort.  *See*

Terry Decl. ¶ 4; Mem. 43.  What Dr. Terry "chose to wear when she opened the door to her

apartment" is not relevant, *contra* Opp. 42; but it is highly relevant that the agents subsequently

declined to permit her to change when she asked.  And, tellingly, the cases cited in the

opposition—neither of which involve a female defendant being confronted braless in pajamas by

male agents—conspicuously do not involve defendants who expressed any discomfort with their

lack of clothing.  *See id.* (citing *Newton*, 369 F.3d at 675; *United States v. Pichardo*, 1992 WL

249964, at *6–7 (S.D.N.Y. Sept. 22, 1992)).  The agents' refusal to allow Dr. Terry to wear

---

[23] *See* Opp. 42–47 (explaining duties of "an arresting officer" and discussing "valid law enforcement reasons").

[24] "An attorney's unsworn statements in a brief are not evidence."  *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) (per curiam).

appropriate clothing while they questioned her shows that the agents sought to make her feel

less—and not more—comfortable, which is plainly consistent with custody.  *See, e.g.*, *United*

*States v. Hallford*, 280 F. Supp. 3d 170, 182 (D.D.C. 2017) (finding interview custodial where

suspect "was far from comfortable" (cleaned up)); *cf. Hernandez v. McIntosh*, 2023 WL

6566817, at *26 (S.D.N.Y. Oct. 10, 2023) (noting recommending finding no custodial

interrogation where law enforcement "did not deprive Hernandez of comfort" and "fulfill[ed]

Hernandez's request for a jacket"), *adopted by*, 2024 WL 2959688 (S.D.N.Y. June 11, 2024).

The government similarly argues (at 45) that it is of no concern that Dr. Terry was not

told she could leave the hotel.  That is wrong; the agents' failure to advise Dr. Terry that she

could leave, in conjunction with their actual refusal to permit her to leave even briefly, is a

relevant and powerful factor that weighs in favor of custody.[25]  *See* Mem. 44.  That is because

under these circumstances, a reasonable person in Dr. Terry's position would have understood

that "authorities affirmatively convey[ed] the message that [she was] not free to leave."  *See*

*Mitchell*, 966 F.2d at 98.

### C.    The Court Should Hold an Evidentiary Hearing

In her Declaration, Dr. Terry provided a "sufficiently definite, specific, detailed, and

nonconjectural" accounting of the events of June 5, 2023 to enable the Court to conclude that

there are contested issues of fact.  Terry Decl.; *see United States v. Watson*, 404 F.3d 163, 167

(2d Cir. 2005) (quotation marks omitted).  Accordingly, if the Court is not inclined to grant Dr.

Terry's motion on the papers, then at the very least, an evidentiary hearing is required.

---

[25] This factor is relevant, but not dispositive.  Indeed, even if the agents had said Dr. Terry could leave, that statement's "mere recitation . . . does not render an interrogation non-custodial *per se*."  *United States v. Craighead*, 539 F.3d 1073, 1088 (9th Cir. 2008); *accord, e.g.*, *United States v. Giddins*, 858 F.3d 870, 880 (4th Cir. 2017) ("such a statement is not talismanic or sufficient in and of itself to show a lack of custody" (quotation marks omitted)).

The government's claim that the Declaration contains "falsehoods," and its reliance upon unsworn "facts" from FBI 302s ("302s") (at 35–38) only crystallize the need for a hearing.[26]  *See United States v. Filippi*, 2013 WL 208919, at *9 (S.D.N.Y. Jan. 16, 2013) ("the Government's reliance on an unsworn investigative report in its Memorandum is simply insufficient to persuade the Court that there are no contested issues of material fact").  Moreover, the 302s materially differ from Dr. Terry's account of the interrogation in numerous material ways, including:

- Dr. Terry attests that the agents *told her* to go with them to the hotel so that they could continue questioning her.  Terry Decl. ¶ 9.  According to a 302, "Agents *offered* [Dr. Terry] to continue the interview at a hotel suite a few blocks away and that continuing the interview was voluntary."  Opp. Ex. A at 7 (emphasis added); Opp. 43 n.17.

- Dr. Terry does not recall being informed that she could leave the hotel room, but recalls that when she asked to step out, she was told she could not.  *See* Terry Decl. ¶¶ 14, 30.  A 302 states that agents told Dr. Terry she "was free to leave at any time" and that "she was free to conduct the ZOOM meeting in the hotel suite."  Opp. Ex. A at 8, 10; Opp. 45 n.19.

- Dr. Terry attests that throughout the day, the lead FBI agent raised his voice and berated her repeatedly.  *See* Terry Decl. ¶¶ 8, 18, 19.  The government denies this.  Opp. 47 n.20.

- A 302 states Dr. Terry "snapped at [a]gents that she knew the interview was voluntary" and commented "[the FBI SSA's] spouse was likely frustrated with [his] tendency to be repetitive."  Opp. Ex. C at 4; Opp. 35, 49 n.20.  Dr. Terry attests that her comment about the FBI SSA's spouse was due to the agents' repeated insistence that Dr. Terry was "directed" and "controlled" by South Korean NIS, not because she was informed her presence was voluntary.  Supplemental Declaration of Dr. Sue Mi Terry ¶¶ 3–4.

In sum, if the Court is not inclined to grant Dr. Terry's motion on the papers, then a hearing is required, at which it will be apparent that Dr. Terry's account of June 5, 2023 is accurate, that she was in custody, and that her alleged statements must be suppressed.

## CONCLUSION

The Court should dismiss the Indictment.  If not, the Court should order the government to provide a bill of particulars and should suppress Dr. Terry's alleged June 2023 statements.

---

[26] The 302s are misleading, self-serving, and simply inaccurate.  This is hardly surprising given the lapse of time between interrogation and drafting.  Contrary to the government's assertion (at 40) that the 302s were drafted "shortly after" the hours-long, unrecorded interrogation, they were drafted between 11 and 22 days later.  *See* Opp. Exs. A, B, C (dated June 27, 2023, June 16, 2023, June 22, 2023).

Dated:   New York, New York                    Respectfully submitted,
         April 9, 2025


                                               By: _____
                                                   Nicholas J. Lewin

                                               KKL LLP
                                               350 Fifth Avenue, 77th Floor
                                               New York, NY  10118
                                               Telephone: (212) 390-9550
                                               Nick.Lewin@KKLllp.com
                                               Melissa.Danzo@ KKLllp.com

                                               SELENDY GAY PLLC
                                               1290 Avenue of the Americas
                                               New York, NY  10104
                                               Telephone: (212) 390-9000
                                               FGay@selendygay.com
                                               TAgangaWilliams@selendygay.com
                                               JBean@selendygay.com

                                               WILLKIE FARR & GALLAGHER LLP
                                               787 Seventh Avenue
                                               New York, NY  10019-6099
                                               Telephone: (212) 728-8000
                                               lwolosky@willkie.com

                                               JENNER & BLOCK LLP
                                               1155 Avenue of the Americas
                                               New York, NY  10036-2711
                                               Telephone: (212) 891-1600
                                               abarkow@jenner.com
                                               abernstein@jenner.com
                                               jgordon@jenner.com

                                               *Attorneys for Dr. Sue Mi Terry*