UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
UNITED STATES OF AMERICA                                      :
                                                              :     24 Crim. 427 (LGS)
                                                              :
                -against-                                     :     **OPINION & ORDER**
                                                              :
SUE MI TERRY,                                                 :
                                      Defendant.              :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

Defendant Sue Mi Terry was indicted on July 15, 2024, on one count of conspiracy to violate the Foreign Agents Registration Act ("FARA") and one count of failure to register under FARA. Defendant moves for suppression of, and/or disclosure relating to, information derived from searches conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ("FISA"), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829. Defendant's motion is denied.

I.  **BACKGROUND**

On July 22, 2024, the Government filed a letter notifying "[D]efendant Sue Mi Terry and . . . the Court that, pursuant to 50 U.S.C. §§ 1806(c) and 1825(d), [the Government] intends to offer into evidence, or otherwise use or disclose in any proceedings in this matter, information obtained or derived from electronic surveillance and physical search pursuant to the Foreign Intelligence Surveillance Act of 1978." Defendant moves to suppress any evidence obtained unlawfully and for disclosure of the FISA materials to the defense. For the reasons discussed below, Defendant's motion is denied.

## II. DISCUSSION

### A. Legal Standard

#### i. FISA Application Procedure

"Enacted in 1978, FISA permits the Chief Justice of the United States to designate eleven federal judges as the Foreign Intelligence Surveillance Court . . . with jurisdiction to entertain ex parte executive applications for electronic surveillance for the purpose of obtaining foreign intelligence information."[1] *United States v. Abu-Jihaad*, 630 F.3d 102, 117 (2d Cir. 2010). "Congress passed FISA to settle what it believed to be the unresolved question of the applicability of the Fourth Amendment warrant requirement to electronic surveillance for foreign intelligence purposes, and to remove any doubt as to the lawfulness of such surveillance." *United States v. Stewart*, 590 F.3d 93, 126 (2d Cir. 2009). The FISA provisions that address electronic surveillance are found at 50 U.S.C. §§ 1801-1812, and the provisions that address physical searches are found at 50 U.S.C. §§ 1821-1829. The substantive and procedural requirements governing electronic surveillance and physical searches are similar, although not identical. For ease of reference, this Opinion refers to electronic surveillance and physical searches together as "surveillance." For clarity, all analysis below applies to the legality of any electronic surveillance or physical search conducted pursuant to FISA that returned information the Government has stated it intends to use in this case.

The Government initiates the FISA application process by filing an ex parte application with the Foreign Intelligence Surveillance Court (the "FISC"). The application must be approved by the Attorney General and make a detailed factual showing regarding the target of

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

the surveillance, the justification and proposed procedure for the surveillance, the information sought and the facilities where the surveillance will be directed.  50 U.S.C. § 1804(a); *see id.* § 1823(a).  The application must be accompanied by a certification that, among other things, "a significant purpose of the surveillance is to obtain foreign intelligence information."  *Id.* § 1804(a)(6)(B); *see id.* § 1823(a)(6)(B).

The FISC may issue an ex parte order approving the surveillance only if the court finds "probable cause to believe that" the surveillance target is a "foreign power or an agent of a foreign power" and that the "facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power."  *Id.* § 1805(a); *see id.* § 1824(a).  "In determining whether or not probable cause exists . . . a judge may consider past activities of the target, as well as facts and circumstances relating to current or future activities of the target."  *Id.* § 1805(b); *see id.* § 1824(b).  However, "no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment to the Constitution of the United States."  *Id.* § 1805(a)(2)(A); *see id.* § 1824(a)(2)(A).

The FISC must also find that the application's "proposed minimization procedures" are "reasonably designed . . . to minimize the acquisition and retention, and prohibit the dissemination, of non-publicly available information concerning unconsenting United States persons."  *Id.* §§ 1801(h)(1), 1805(a)(3); *see id.* §§ 1821(4)(A), 1824(a)(3).  "FISA requires the Attorney General to adopt minimization procedures.  To fulfill this statutory requirement, the Attorney General has adopted standard minimization procedures that apply to every FISA application."  *United States v. Chi Ping Ho*, No. 17 Crim. 779, 2018 WL 5777025, at *3 (S.D.N.Y. Nov. 2, 2018).

If the FISC finds that the Government has satisfied FISA's requirements, it must issue an order approving the surveillance. 50 U.S.C. § 1805(a); *see id.* § 1824(a). The order must specify the target of the surveillance, the nature and location of the places at which the surveillance will be directed, the information sought, the means of conducting the surveillance, and the period of time for which the surveillance is approved. *Id.* § 1805(c)(1); *see id.* § 1824(c)(1). The Government can request an extension of that time limit by submitting another FISA application. *See id.* §§ 1805(d)(2), 1824(d)(2).

### ii. Court Review of FISC Orders

The Government may use information obtained from FISA surveillance in a criminal proceeding if (1) the Attorney General authorizes the use and (2) the Government provides notification to "the aggrieved person and the court . . . that the Government intends to so disclose or so use such information." *Id.* § 1806(b)-(c); *see id.* § 1825(c)-(d). After receiving such notice, the aggrieved person "may move to suppress the evidence obtained" from the surveillance on the grounds that it was "unlawfully acquired" or "the surveillance was not made in conformity with an order of authorization or approval." *Id.* § 1806(e); *see id.* § 1825(f). An aggrieved person may also move for disclosure of the FISA application materials. *Id.* §§ 1806(f), 1825(g).

If such a motion is filed, then, upon the filing of an affidavit by the Attorney General stating "under oath that disclosure or an adversary hearing would harm the national security of the United States," the court must review the FISA materials "in camera and ex parte . . . as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." *Id.* § 1806(f); *see id.* § 1825(g). The court may order disclosure of the FISA materials "under appropriate security procedures and protective orders . . . only where

such disclosure is necessary to make an accurate determination of the legality of the surveillance." *Id.* § 1806(f); *see id.* § 1825(g).  Where the court "determines that the surveillance was lawfully authorized and conducted, it shall deny the motion [to suppress or disclose FISA material] . . . except to the extent that due process requires discovery or disclosure." *Id.* § 1806(g); *see id.* § 1825(h).  "FISA warrant applications are subject to minimal scrutiny by the courts, both upon initial presentation and subsequent challenge." *Abu-Jihaad*, 630 F.3d at 130.  The Second Circuit has emphasized that disclosure of FISA materials "is the exception and ex parte, in camera determination is the rule." *Id.* at 129.

### B. Basis for Denial of Defendant's Motion

Defendant's motion to suppress and for disclosure of the FISA materials is denied.  "In evaluating the legality of FISA surveillance, a reviewing court's in camera and ex parte review should determine: (1) whether the certification submitted by the executive branch in support of a FISA application was properly made; (2) whether the application established probable cause, as required by FISA; and (3) whether the electronic surveillance and physical search were properly minimized." *Chi Ping Ho*, 2018 WL 5777025, at *5.  After careful review of the FISA materials in this case, the Court is satisfied that all three requirements are met.

The review was conducted in camera and ex parte both because Attorney General Pamela Bondi submitted an affidavit stating under oath "that it would harm the national security of the United States to disclose or hold an adversary hearing with respect to [the] FISA materials," and because disclosure is not "necessary to make an accurate determination of the legality of the surveillance."  50 U.S.C. § 1806(f); *see id.* § 1825(g).  In this Opinion, discussion of the classified FISA materials is "necessarily circumspect" so as not to divulge classified information. *United States v. Hasbajrami*, No. 11 Crim. 623, 2017 WL 3610595, at *2 n.2 (E.D.N.Y.

5

Apr. 6, 2017).

First, the certifications in support of the FISA applications were properly made. "[T]he representations and certifications submitted in support of an application for FISA surveillance should be presumed valid by a reviewing court absent a showing sufficient to trigger a *Franks* [*v. Delaware*, 438 U.S. 154 (1978)] hearing." *Abu-Jihaad*, 630 F.3d at 130. The Court's in camera and ex parte inspection confirms that the certifications were made in accordance with FISA's requirements. Defendant argues that the Government "used FISA to collect Dr. Terry's communications years after she had become the subject of a criminal investigation," circumventing FISA's requirement that an executive official certify that "a significant purpose of the surveillance is to obtain foreign intelligence information." 50 U.S.C. § 1804(a)(6)(B); *see id.* § 1823(a)(6)(B). This argument lacks merit sufficient to disturb the FISC findings. Before the FISC, the Government "detailed facts supporting the Government's certification[s] that a significant purpose of the surveillance was to gather foreign intelligence information." *Abu-Jihaad*, 630 F.3d at 131.

Second, the Government's applications established probable cause to believe that the target of the surveillance was a "foreign power or an agent of a foreign power" and that the "facilities or places at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power." 50 U.S.C. § 1805(a); *see id.* § 1824(a). While "the Second Circuit has not made clear whether de novo review is required or whether the FISC determination is entitled to due deference," "[c]ourts in this Circuit tend to give the FISC's determination due deference." *United States v. Liu*, No. 19 Crim. 804, 2021 WL 6127396, at *1 (S.D.N.Y. Dec. 28, 2021). Under either standard of review, the Government provided sufficient evidence to show probable cause.

Defendant's argument that the Government's application materials likely contained falsehoods or omissions rendering the FISC's probable cause determinations defective lack merit.  Defendant argues that the Government's application materials likely "contain[ed] false representations and omissions," including that the applications (1) "likely omitted necessary context" that would have made clear that the probable cause findings were based solely on Defendant's First Amendment-protected activities and (2) likely included a "false report from an unreliable human source" that Defendant was paid by the South Korean government to write a particular magazine article.  The Court's review confirms that the FISC did not base its probable cause determinations "solely upon the basis of activities protected by the first amendment," 50 U.S.C. §§ 1805(a)(2)(A), 1824(a)(2)(A), and that the record contains no basis to find that the Government's application materials included falsehoods or omissions rendering the FISC's probable cause determinations defective.  Defendant also cites the Government's misconduct in seeking other FISA warrants as a basis for scrutiny here.  *See, e.g.*, *In re Accuracy Concerns Regarding FBI Matters Submitted to FISC*, 411 F. Supp. 3d 333, 334-35 (F.I.S.C. 2019) (stating that the Federal Bureau of Investigation, and by extension the Department of Justice, had "misle[d] the FISC").  The record reveals no basis to conclude that the Government materially misled the FISC here.

Similarly, Defendant states that a *Franks* hearing would be "welcome . . . if helpful to the Court."  A *Franks* hearing is not warranted because "nothing in the record . . . provides any basis to think that the FISA application" contained a false statement "made knowingly and intentionally, or with reckless disregard for the truth."  *Abu-Jihaad*, 630 F.3d 131; *see also Liu*, 2021 WL 6127396, at *3.

Third, the surveillance was properly minimized.  "[M]inimization requirements are

7

subject to a rule of reason." *Chi Ping Ho*, 2018 WL 5777025, at *7.  "Absent evidence that on the whole there has been a complete disregard for the minimization procedures, the fact that some communications should have been minimized does not affect the admissibility of others that were properly acquired and retained." *Id.*  Applying this standard, the electronic surveillance was lawfully conducted under the minimization standards applicable in every FISA case, adopted by the Attorney General and approved by the FISC.

Defendant finally requests disclosure of material that due process requires to be disclosed, including materials discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  The record contains no basis to conclude that the Government has withheld material that due process requires to be disclosed.  *See Abu-Jihaad*, 630 F.3d at 129.

## III.  CONCLUSION

For the reasons stated, Defendant's motion for suppression of and/or disclosure of FISA materials is denied.

Dated: January 16, 2026
       New York, New York

                                        LORNA G. SCHOFIELD
                                   UNITED STATES DISTRICT JUDGE